IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kathryn M. McLendon, | ) | CA No. 3:07-cv-1480-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER ON** |
| v. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Fleetwood Enterprises, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Defendant Fleetwood Enterprises, Inc.'s ("Fleetwood's") motion for summary judgment. For the reasons set forth below, the court agrees that Plaintiff, Kathryn M. McLendon ("Mrs. McLendon" or "Plaintiff"), has failed to produce sufficient evidence in support of either of her warranty claims to raise a genuine issue of material fact for trial. Fleetwood's motion is, therefore, granted.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). The nonmoving party must then designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## BACKGROUND

The following evidence is presented in the light most favorable to Plaintiff, the non-moving party. Mrs. McLendon purchased the recreational vehicle ("RV") at issue in this action in February 2003. The purchase was made through Holiday Kamper and Boats, LLC ("Holiday Kamper"), which acted as a dealer for Fleetwood, the manufacturer of the subject RV.[1] Mrs. McLendon dep. at 17.

Mrs. McLendon and her husband, James McLendon ("Mr. McLendon") began to experience problems with the Fleetwood RV soon after it was purchased. *See, e.g.,* Mr. McLendon dep. at 54 (discussing problems being addressed by Holiday Kamper beginning in April 2003). At least some of these problems arose during the first year of ownership and were communicated to either Fleetwood or Holiday Kamper within that period. *Id*.

The communications with Fleetwood were by phone. Mrs. McLendon dep. at 35 (indicating telephone communications with Fleetwood).[2] In addition, Mr. or Mrs. McLendon, or both

---

[1] Holiday Kamper was named as a Defendant in the original, first, and second amended complaints, the last being the complaint in effect at the time this action was removed to federal court on May 24, 2007. It does not, however, appear that Holiday Kamper was ever served. All claims against Holiday Kamper were voluntarily dismissed without prejudice on June 12, 2007.

[2] While the evidence is rather sketchy on this point, Fleetwood allegedly referred Mrs. McLendon and her husband back to Holiday Kamper or to manuals when the McLendons called Fleetwood. *See* Mrs. McLendon dep. at 35 (indicating two different calls to Fleetwood at unspecified times); *id*. at 42 (stating that "Fleetwood did not handle the customer service end at all. They just basically told us, well, it's marked, go find it."). *See also* Mr. McLendon dep. at 52 (stating that Fleetwood told the McLendons "that the dealers need to make the contact with Fleetwood"); *id*. at 56 (indicating that the McLendons were referred to the dealer when they called

(continued...)

2

communicated with Holiday Kamper in person and by phone regarding problems with the RV. Mr. McLendon dep. at 52 (indicating in person and telephone conversations with Holiday Kamper). The McLendons alerted Holiday Kamper to rust problems with the RV as early as April 2003. Mr. McLendon dep. at 54 (referring to Holiday Kamper when stating: "They were still – I mean, even since April of '03 – addressing the rust issues.").

While oral communications relating to the problem began at some earlier time, Mrs. McLendon's first *written* communication with Fleetwood or Holiday Kamper was on October 13, 2005. At that time, she or her husband provided a list of uncorrected problems to Holiday Kamper and Fleetwood. Mrs. McLendon dep. at 35; Mr. McLendon dep. at 52 & 96 (discussing list provided on October 13, 2005). The items on this list include a nonfunctioning refrigerator, numerous loose or rattling parts, and a number of specifically identified areas or parts that were rusted or rusting. Dkt. No. 31-5 (list).[3] The list represented all the problems known to the McLendons as of October 13, 2005 (more than one but less than three years after the RV was purchased).

Frustrated in their dealings with Holiday Kamper, the McLendons wrote directly to Fleetwood in January 2006 (shortly before expiration of the three-year warranty) complaining that the RV had required an excessive number of repairs. Dkt. No. 31-6 at 2 (January 17, 2006 letter).

---

[2](...continued)
Fleetwood asking for information regarding the location of the power steering pump reservoir); *id.* at 92 ("Everything has been verbal with everybody up there, and we've talked to Fleetwood by phone and they recommended that we go through the dealer as a middle person to handle it.").

[3] In his deposition, Mr. McLendon stated his understanding that Holiday Kamper was contacting Fleetwood about the problems. This included sending Fleetwood a disk of pictures of the rust sometime after October 13, 2005. Mr. McLendon dep. at 55 (Dkt. No. 34-2 at 7). According to Mr. McLendon, "[a]ll of [the pictures] were blurry. You couldn't tell what you were looking at." *Id.*

The only specific ongoing problems mentioned in that letter were "rust issues involving the structural chassis among other areas." *Id.* Fleetwood responded by letter dated January 24, 2006. Dkt. No. 31-12. The letter states that Fleetwood's "limited warranty does not cover defects caused by or related to environmental conditions, salt, hail or chemicals in the atmosphere." *Id.* It also states that the warranty "was for one (1) year from date of purchase, or 15,000 miles" and, therefore, "expired on March 1, 2004." *Id.* No mention is made of a three-year structural warranty.

**Scope of Warranty.** Most of the RV's components were "warranted under normal use to be free from manufacturing defects in material or workmanship" for the first year or 15,000 miles, which ever occured first. Structural defects, "limited to the . . . roof structure, sub-floor structure and Vacu-bond® walls," were covered for three years. Dkt. No. 31-4 at 1.

The warranty contains a number of specific exclusions. Germane to this action is the excluson of coverage for "[d]efects caused by or related to: . . . Environmental conditions (salt, hail, chemicals in the atmosphere, etc.)." *Id.* at 3.

**Notice Requirements.** Under the "Coverage Provided" heading, the warranty states that "*[w]ritten* notice of defects must be given to the selling dealer or manufacturer not later than ten (10) days after the expiration of the warranty period." *Id.* (emphasis added). Under "Owner's Obligations," the written warranty directs the owner to "*contact* the selling dealer, or Fleetwood Owner Relations, giving sufficient information to resolve the matter." *Id.* (emphasis added).

The "Dealer's Obligations" section suggests that the dealer is initially responsible for trying to resolve defects. The section headed "When the Dealer Does Not Resolve the Problem") advises the following:

4

> If the dealer is unable or unwilling to respond to a problem which the owner is convinced is covered by the warranty, the owner should *contact* Fleetwood Owner Relations at the address *or telephone number* listed on the next page and provide Fleetwood Owner Relations with a description of the problem and attempts made to resolve it.

*Id.* (emphasis added).

**Procedural History.** On May 23, 2006, several months after receiving the letter from Fleetwood, Mrs. McLendon filed a complaint in state court asserting a single cause of action for breach of warranty. Dkt. No. 1-2. Only the rust problems were mentioned in the original complaint. *Id.* ¶ 6. The complaint was amended twice, then removed to this court on May 24, 2007, based on federal question jurisdiction. References to electrical problems were added in the amended complaints.[4] No other problems are mentioned in any of the complaints.

A scheduling order was entered on June 6, 2007. Deadlines for expert witness disclosures were set by this order. As to Plaintiff's deadline, the order states:

> Plaintiff(s) shall *file and serve* a document identifying by full name, address, and telephone number each person whom Plaintiff(s) expects to call as an expert at trial and *certifying that a written report* prepared and signed by the expert pursuant to Fed. R. Civ. P. 26(a)(2)(B) *has been disclosed* to other parties by **October 4, 2007.**

Dkt. No. 7 at 3 (italics added). Plaintiff has not filed any document with the court certifying that expert disclosures have been given. Neither, according to Defendant, has Plaintiff served Defendant

---

[4] The first amended complaint (filed May 17, 2007) adds reference to electrical problems as "mentioned" to Fleetwood or Holiday Kamper during the warranty period which ended in February 2006. Dkt. No. 1-3 ¶ 6. *But see* Mr. McLendon dep. at 82 (indicating the electrical problems first arose sometime after April 2006). It also adds a federal cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2304. *Id.* at ¶ 14. The second amended complaint (filed one week later, on May 24, 2007), is essentially the same except for dropping an individual Defendant. Prior to removal, Defendant confirmed that Plaintiff was seeking in excess of $50,000, thus meeting the jurisdictional threshold for federal jurisdiction under the Magnuson-Moss Warranty Act.

5

with the required expert witness disclosures. *See* Dkt. No. 35 (Reply) at 3-5.[5] The only indication that Plaintiff might call an expert appears in the parties' joint Rule 26(f) Report in which Plaintiff lists Tony Langenberg as both a fact and a potential expert witness. *See* Dkt. No. 12 at 2 & 3. This preliminary disclosure does not indicate either Mr. Langenberg's area of expertise or the issues as to which he might offer any opinion.[6]

Langenburg was deposed on March 6, 2008 (well after expiration of the expert witness disclosure deadline).[7] He offered fact testimony based on his personal observation of the condition of Plaintiff's RV in or around April 2006, four years after the RV was purchased. Langenberg dep. at 44. Langenburg also purported to offer an opinion as to one possible cause of the rust problems: improper priming. Langenburg dep. at 74-76. He conceded, nonetheless, that he had not conducted any tests to see if the RV was properly primed. He also conceded that the rust could have been caused by exposure to "salt or other chemicals" used by highway departments or salt water on the coast. Langenburg dep. at 72-73.

## MOTION FOR SUMMARY JUDGMENT

**Defendant's Motion for Summary Judgment.** Fleetwood moved for summary judgment on multiple grounds, including that Plaintiff had failed to give *written* notice of any defects to either Fleetwood or Holiday Kamper within one year of purchase and that the only written notice which

---

[5] Plaintiff has not challenged Defendant's statement that Plaintiff failed to comply with the expert witness disclosure requirements as set forth in this order.

[6] Mr. Langenberg's business, however, is identified as "Tony's RV Parts & Services."

[7] Langenburg was listed both as a fact and potential expert witness. Given his dual role, the court will not presume that his deposition was taken based on an assumption that he would testify as an expert.

was given within three years of purchase listed no "structural" defects. Dkt. No. 31-2. Fleetwood also argues that the rust problems, even if deemed structural defects, are excluded from coverage under the environmental conditions exclusion. As to the latter, Fleetwood relies on the testimony of its expert, Barry Krueckeberg, whose report supports Fleetwood's position. *See* Dkt. No. 31-2 at 7.

Fleetwood also argues that any opinion testimony from Langenburg should be excluded because he was not properly disclosed as an expert. Even if allowed as an expert, Fleetwood argues that Langenburg's testimony is insufficient to raise a genuine issue of fact as to coverage of any rust damage. This argument rests on Langenburg's concessions that (1) he did not test to determine the adequacy of the primer; and (2) road chemicals or salt could have contributed to the rust problems. Finally, Fleetwood notes that all problems other than the rust and a problem with the awning and door rattle were repaired by the dealer at no cost to Plaintiff, leaving only rust issues in dispute. Dkt. No. 31-2 n. 4.

**Plaintiff's Response.** In her two-page response, Plaintiff asserts that the dealer had been addressing the rust problems since April of 2003, and that Fleetwood was made aware of the problems at some point in time.[8] Plaintiff also asserts that her "expert" testified that proper priming or sealing would have prevented the rust.[9] Finally, Plaintiff argues that the scope of the exclusion

---

[8] The only support for the claim that Holiday Kamper had been addressing rust issues since April 2003, is a single, somewhat ambiguous statement from Mr. McLendon's deposition. Plaintiff also relies on Mr. McLendon's deposition for the proposition that the dealer was contacting Fleetwood about the problem. *See* Dkt. No. 34 at 1. The cited portion of the deposition, however, refers only to a statement by the dealer that it had forwarded pictures to Fleetwood at a substantially later time (apparently in October 2005). Mr. McLendon also testified that these pictures were so blurry that he "couldn't make out any of them." Mr. McLendon dep. at 55.

[9] Plaintiff does not mention any defects other than rust in her response to the motion for summary judgment.

7

would not apply to road salt or other road chemicals because the exclusion is limited to damage caused by "chemicals in the atmosphere." *See* Dkt. No. 34 at 2 (stating that "[t]he manufacturer could have excluded all rust or all chemical damage. It did not and road salt or other road chemicals are not excluded.")

**Defendant's Reply.** In its reply, Defendant reasserts that any claim under the one-year warranty is barred for lack of timely written notice. It also argues that the various problems for which notice was provided to Fleetwood within three years of purchase are not covered under the three-year warranty because they are not "structural" defects and because the rust-related problems are excluded from coverage. Finally, Fleetwood reiterates that the only admissible evidence is that the rust was caused by environmental conditions and would, therefore, be excluded from coverage.

## DISCUSSION

### I.     Adequacy of Notice

It is undisputed that Plaintiff did not give *written* notice of any warranty issues to either Fleetwood or Holiday Kamper until well over a year after purchase. There is, however, substantial evidence that she gave both Fleetwood and the dealer oral notice of various problems within her first year of ownership of the RV.

Regarding notice to Fleetwood, Plaintiff claims that, when contacted, Fleetwood referred her back to the dealer. This is consistent with the warranty provisions which place initial responsibility for responding to problems on the dealer. Plaintiff has also presented at least some evidence that the dealer was making ongoing, albeit ineffective, attempts to resolve her concerns. Thus, although Plaintiff did not give written notice during the one year period, there is evidence that she gave notice which was treated, during that same year, as adequate to invoke the warranty provisions.

There does not appear to be any evidence, and at least no undisputed evidence, that Fleetwood or Holiday Kamper ever advised Plaintiff that she must put her concerns into writing. Further, although the warranty refers at one point to a requirement for written notice, at other points it refers more generally to a requirement to "contact" the dealer or Fleetwood.[10] Collectively, these facts may give rise to a genuine issue of material fact as to whether any *written* notice requirement has been waived as to problems for which *oral* notice was given. At least some notice of the *specific* defect would, however, need to have been given during the relevant time frame: within one year for the normal warranty, and within three years for the structural-components warranty.

As noted above, the second amended complaint addresses only two categories of problem: rust and electrical. Even assuming there were other unresolved problems, they have not been properly raised by the complaint.

Plaintiff has offered no evidence that she gave notice in any form to Holiday Kamper or Fleetwood of any electrical problem within one year and ten days of her purchase of the RV. Any claim for breach of warranty as to the electrical problems must, therefore, fail for lack of notice because such problems could only be covered under the one year warranty. The result would be the same if the three-year warranty applied to electrical problems (which it clearly does not), because there is no evidence that Plaintiff gave notice of electrical problems even within three years and ten days of her purchase. Indeed, the only evidence offered relating to the electrical problems is Mr. McLendon's testimony that these problems arose more than three years after purchase.

---

[10] The section headed "Dealer's Obligations" and the section headed "When the Dealer Does Not Resolve the Problem" both refer to the need to "contact" the dealer or Fleetwood, respectively. There is no indication that this contact must be in writing. Further, the section regarding contact with Fleetwood includes both an address and a phone number, further suggesting that oral contact would suffice. Dkt. No. 31-4 at 2.

This leaves the question of notice as to the alleged problems with rust, which, in any event, appear to be the only problems for which Plaintiff now seeks recovery. *See* Dkt No. 34 (referring only to rust problems in opposition memorandum). It is clear that, within three years of purchasing the RV, Plaintiff gave written notice of specific areas with rust, which Plaintiff was asking the dealer and Fleetwood to repair under the warranty. There is also some evidence that rust issues were raised with the dealer beginning shortly after the date of purchase. The latter evidence is, however, too general to support a finding of adequate notice under the one-year warranty (assuming oral notice would suffice) because there is no testimony indicating which areas of rust were identified.[11]

For these reasons, the court concludes that the only notice which is arguably sufficient to invoke the warranty as to rust damage is that found in the handwritten list dated October 13, 2005. What coverage is available, if any, for these areas of rust would, therefore, have to arise under the three-year structural warranty.

**II.    Structural Coverage.**

Many of the areas of rust identified in the October 13, 2005 list of defects would not involve the structural components of the RV (as defined in the warranty). A few may. The court need not, however, determine which areas of rust might constitute "structural" defects because rust is excluded under the environmental exclusion for the reasons addressed in Section III below.

**III.    Environmental Exclusion.** The warranty excludes coverage for "[d]efects caused by or related to: . . . Environmental conditions (salt, hail, chemicals in the atmosphere, etc.)." Dkt. No. 31-4 at 3. Defendant's expert has offered testimony that the rust at issue was caused by road

---

[11] The only evidence that Plaintiff gave notice of rust problems before October 13, 2005, is Mr. McLendon's very general statement that rust problems had been the subject of discussions with the dealer beginning in April 2003. No evidence is offered as to which areas of rust were discussed at that time or within the first year and ten days after purchase.

10

chemicals including salt, or salt air. Even if allowed to offer an expert opinion,[12] Plaintiff's expert has conceded that the rust may have been caused by moist salt air or salt and other chemicals coming off the road. He has also conceded the absence of support for his opinion that the RV was inadequately primed, which may have allowed environmental conditions to cause more damage than they otherwise might have caused. Under these circumstances, the court finds an absence of any evidence to support Plaintiff's position that the rust damage was caused by something other than an excluded cause. *See generally Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc*., 570 S.E.2d 197, 205 (Ct. App. 2002) (noting that when "the construction of the subject contract can be determined by consideration of the plain and unambiguous language of the contract, it becomes a question of law to be resolved by the court and is thus no bar to the grant of summary judgment." ).[13]

For these reasons, regardless of the adequacy or timing of notice, and regardless of whether the rust damage is to a structural component, Plaintiff cannot succeed on her claim because she has failed to present evidence from which a reasonable jury could find that the rust damage was not excluded. By contrast, Defendant has presented uncontradicted evidence that the damage resulted from causes expressly excluded from coverage.

---

[12] Plaintiff has failed to follow the clear requirements of the federal and local rules as to expert disclosures, even after these requirements were drawn to her attention by this court's scheduling order. Under these circumstances, the court would normally exclude any expert opinion which Plaintiff may seek to elicit from a witness who was disclosed as a possible expert only through the joint Rule 26(f) report.

[13] Plaintiff's argument that the exclusion applies only to "chemicals in the atmosphere" and does not cover salt or other chemicals coming off the road must be rejected because it is contrary to the plain language of the warranty which excludes: "[d]efects caused by or related to: . . . Environmental conditions (salt, hail, chemicals in the atmosphere, etc.)."

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **granted**.

**IT IS SO ORDERED.**

**S/ Cameron McGowan Currie**
**CAMERON MCGOWAN CURRIE**
**UNITED STATES DISTRICT JUDGE**

**Columbia, South Carolina**
**April 30, 2008**